Penny L. Koepke
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
480-833-1001
pkoepke@hoalaw.biz

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Classes*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JUSTIN DOWNING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HAVEN HEALTH GROUP, LLC, an Arizona limited liability company,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Justin Downing ("Plaintiff" or "Downing") brings this class action complaint against Defendant Haven Health Group, LLC ("Defendant" or "Haven Health") to obtain redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA" or "Act"), 15 U.S.C. § 1681, *et seq.*, specifically its failure to provide lawful notices and disclosures to its job applicants and employees when obtaining background checks about them. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the FCRA explicitly acts to protect job applicants and existing employees from having background checks performed about them without

1

their express permission and from having adverse employment action taken against them as a result of potentially inaccurate or immaterial information. To that end, employers who seek to obtain and use consumer reports regarding their job applicants and employees are required to provide: (1) a standalone disclosure and authorization for the background check prior to obtaining any consumer reports in the first place, and (2) copies of the reports obtained and a summary of rights under the Act prior to taking any adverse employment action against the applicants/ employees based on any information contained in such reports.

2. Defendant willfully violates the FCRA by: (1) failing to provide a clear and conspicuous upfront disclosure, in a document that consists solely of the disclosure (i.e., that stands alone) that Defendant may procure consumer reports about its applicants and employees, and (2) failing to provide its applicants and employees with proper copies of such reports and summaries of their FCRA rights before taking adverse action against them.

3. First, Defendant fails to provide its applicants or employees with a clear and conspicuous, standalone disclosure that indicates Defendant may obtain a consumer report about them for employment purposes. Section 1681b(b)(2) establishes that such disclosure must be made "in a document that consists solely of the disclosure." Here, Defendant provides applicants and employees with a disclosure that is riddled with unnecessary, extraneous, and unlawful information. The result is a disclosure that is, at best, unclear and inconspicuous and confusing to Plaintiff and other consumers. It fails to standalone. That is, on information and belief, the disclosures and authorizations are combined with unrelated extraneous information that confuses the meaning of the disclosure and strips job applicants and employees of their ability to make a knowing authorization. This violates Section 1681b(b)(2)(A)(i) of the FCRA, which, *inter alia*, unambiguously states that the disclosure must be "clear and conspicuous" and be made "in a document that consists solely of the disclosure."

4. Defendant has also willfully violated the FCRA by procuring background checks and consumer reports about its job applicants and employees without providing such

applicants/employees with lawful "pre-adverse action" notices prior to taking adverse action against them—including firing its employees. Instead, Defendant takes adverse action without providing consumers with copies of the background checks procured about them or a written summary of their rights under the FCRA. This failure to provide pre-adverse action notice is a clear violation of Section 1681b(b)(3)(A). As a consequence of Haven Health's failure to provide pre-adverse action notices, applicants and employees are left without a fair opportunity to remedy issues contained within their consumer reports, which defeats the purpose of the pre-adverse action requirement under the FCRA. As Defendant commits these violations as part of its standard policies and practices, Defendant serially violates the FCRA.

5. As a result of Defendant's willful violations of the FCRA, employees and applicants, such as Plaintiff, are deprived of rights, including privacy rights guaranteed to them by federal law, and are thus entitled to statutory damages of at least $100 and not more than $1,000 for each violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

## PARTIES

6. Plaintiff Justin Downing is a natural person and citizen of the State of Arizona. He resides in Show Low, Navajo County, Arizona.

7. Defendant Haven Health Group, LLC is an Arizona limited liability company with its principal place of business located at 2338 W. Royal Palm Rd, Suite J, Phoenix, Maricopa County, Arizona 85021.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which is a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.*, because the classes each consist of over 100 people, at least one member of each class is from a State other than Arizona (the state of Defendant), and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

9. This Court has personal jurisdiction over Defendant because it conducts business in this District, is headquartered and registered to do business in this District, and the unlawful conduct alleged in the Complaint emanated from this District.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered in this District, and Plaintiff's claims arose in substantial part out of Defendant's actions and policies that were decided upon within this District and which have emanated from this District.

## FACTS COMMON TO PLAINTIFF AND ALL COUNTS

11. Haven Health operates numerous long-term care facilities throughout Arizona.

12. In or around January 2018, Plaintiff was hired by Haven Health as an employee at a Haven Health location in Show Low, Arizona.

13. Upon beginning his employment, Plaintiff was required to complete various acknowledgements of company disclosures—including a disclosure regarding Plaintiff's background and criminal history.

14. Rather than provide a clear and conspicuous, standalone disclosure—as the FCRA requires—Haven Health's disclosure and authorization provided to Plaintiff and others was replete with extraneous information. (*See* Haven Health Disclosure & Authorization, a true and accurate copy is attached hereto as Ex. A.) Among other issues, Haven Health's form FCRA background check disclosure unlawfully combines the disclosures required for consumer reports with the disclosures required for investigative consumer reports, including information regarding the nature and scope of any investigation. (*See id.*) Further, the disclosure contains disclosures requiring job applicants and employees to maintain "proper licensure pertinent to" their positions. (*See id.*)

15. Additionally, Haven Health's form FCRA authorization is similarly riddled with extraneous information, including inapplicable state law disclosures and an authorization granting a litany of entities, including law enforcement agencies, state or federal agencies, schools or

4

universities, employers and insurance companies. (*See id.*) In sum, it cannot be said that Haven Health's disclosure and authorization are clear and conspicuous or that they stand-alone.

16. The disclosure provided by Haven Health were confusing to Plaintiff and the average consumer. As a result of the extraneous information, Plaintiff was confused as to the nature of the report being procured about him. That is, because Haven Health fails to provide a standalone disclosure as required under the FCRA, Plaintiff and others were deprived of their ability to meaningfully understand and authorize the reports and wouldn't have authorized them had a lawful disclosure been made.

17. Shortly after Plaintiff completed his application, easyBackgrounds, Inc., on behalf of Haven Health, procured a consumer report, which contained Plaintiff's criminal history.

18. In February 2018, Plaintiff was notified orally and in person that he was being terminated, effective immediately, based upon the contents of a background check that Haven Health had procured about him. No notice was provided before that time, or even at that time, granting Plaintiff the ability to see a copy of the report or a summary of his FCRA rights or to discuss the negative information with Defendant.

19. Rather, sometime after he was told orally and in person that he was being terminated immediately, Defendant provided Plaintiff with a letter notifying Plaintiff that adverse action had been taken against him together with a copy of the consumer report. At no time did Haven Health provide Plaintiff with any pre-adverse action notice as required by the FCRA.

20. As the FTC has made clear, applicants and employees are to be afforded the opportunity to review any background check/consumer report that an employer who is considering taking adverse action has procured and to discuss it with the employer before losing out on a job (or having other adverse action taken) because of information contained in the report. The FTC has stated repeatedly that in general an employer should wait at least five (5) business days following the notice to the applicant or employee of the anticipated adverse action—together

5

with a copy of the report and a summary of the applicant/employees' FCRA rights—before actually taking the adverse action.

21. Simply put, Defendant, by refusing to provide any pre-adverse action notice at all, fails to give applicants any opportunity to discuss the report and any inaccuracies within it prior to taking adverse action.

22. Further, Defendant's Notice of Adverse Action, which was provided to Downing after his termination, does not provide any opportunity to discuss any negative items with Haven Health; instead, it refers consumers to take up any disputes regarding the consumer report with the third-party consumer reporting agency. This runs directly contrary to the purpose of the FCRA.

23. Because of the unlawful disclosures provided to applicants and employees including Plaintiff, as well as Defendant's failure to give applicants an opportunity to remedy issues with the consumer reports, Defendant has willfully denied Plaintiff the rights guaranteed to him by the FCRA. Such violations entitle him, and other similarly situated, to statutory damages of not less than $100 and not more than $1,000.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rule 23(b)(3) on behalf of himself and two nationwide Classes defined as follows:

> **Disclosure Class**: All persons in the United States (1) who applied for employment with Defendant from a date two years prior to the filing of this complaint to the date notice is sent to the Disclosure Class, (2) about whom Defendant procured a consumer report, and (3) who were provided the same form FCRA disclosure and authorization as the disclosure Haven Health provided to Plaintiff.
>
> **Adverse Action Class**: All persons in the United States who (1) were subject to adverse employment action from a date two years prior to the filing of this complaint to the date notice is sent to the Adverse Action Class based in whole or in part on any consumer report procured by Haven Health, and (2) who, like Plaintiff, were provided with an adverse action notice before being provided with any pre-adverse action notice together with a copy of the report and a summary of rights under the FCRA.

6

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' officers and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person. Plaintiff anticipates the need to amend the class definitions following an appropriate period for class discovery.

25. **Numerosity**: The exact numbers of the members of the Classes are unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has thousands of employees and a potentially even greater number of job applicants. Further, the Class members can readily be ascertained through Defendant's records and through the records of any third party it retained to perform the background checks at issue.

26. **Commonality**: Common questions of law and fact exist as to all members of the Classes for which this proceeding will provide common answers in a single stroke based upon common evidence, including:

(a) Whether Defendant's conduct described herein violated the FCRA;

(b) Whether Defendant has procured or caused to be procured consumer reports to investigate prospective employees;

(c) Whether Defendant's disclosure violates the FCRA's requirement that the pre-report disclosure be clear and conspicuous and/or that it "stand alone";

(d) Whether Defendant has acted willfully;

(e) Whether Defendant's failure to provide pre-adverse action notice violates the FCRA; and

(f) The proper measure of statutory damages.

27.     **Typicality**: As a result of Defendant's uniform disclosures and conduct, Plaintiff and the Class members suffered the same injury and similar damages. Thus, Plaintiff's claims are typical of the claims of the other Class members.

28.     **Adequate Representation**: Plaintiff is a member of the Classes and both he and his counsel will fairly and adequately represent and protect the interests of the Classes, as neither has interests adverse to those of the Class members and Defendant has no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Further, Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the financial resources to do so.

29.     **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given Class member's situation, the answer to whether Defendant's pre-report disclosure violate the FCRA and whether its failure to provide pre-adverse action notices is similarly unlawful will be the same for everyone in the Classes—resounding "yesses" on both questions—and they will be proven using common evidence. There are simply no individualized issues as everyone was given the same form disclosure and authorization and was subjected to the same adverse action practices.

30.     **Superiority and Manageability:** A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by/available to the individual Class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the Class members from obtaining effective relief for Defendant's misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contrast, a class action presents far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide

adjudication will also ensure a uniform decision for the Class members and reduce the likelihood of any inconsistent rulings.

~~31.    Plaintiff reserves the right to revise the definition of the Classes as necessary based upon information obtained in discovery.~~

## COUNT I
### Violation of 15 U.S.C. § 1681b(b)(2)(A)(i)
### (On Behalf of Plaintiff and the Disclosure Class)

32.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

33.    The FCRA declares that:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a <u>clear and conspicuous</u> disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists <u>solely of the disclosure</u>, that a consumer report may be obtained for employment purposes . . . .

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

34.    The FCRA defines a consumer report as:

. . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .

(B) employment purposes . . . .

15 U.S.C. § 1681a(d)(1).

35.    Defendant's background checks are consumer reports.

36.    The pre-report disclosure that Defendant provided to Plaintiff and the Disclosure Class members as part of the application process willfully violated the FCRA by not being clear and conspicuous and by including extraneous information such that the disclosure cannot be said to "stand alone." Among other deficiencies, the disclosure is riddled with extraneous information,

combines the disclosures for "investigative consumer reports" with the disclosures required for "consumer reports," and unlawfully includes language regarding the consequences to employees of failing to maintain appropriate licenses. As such, the background check disclosure was not clear and conspicuous and was not presented in a document that stood alone/consisted solely of the disclosure.

37. Defendant's authorization was similarly riddled with extraneous and confusing information, including disclosures purporting to authorize a list of institutions to share information with Defendant or its third-party background check vendor. Plaintiff wouldn't have authorized the background check had a proper disclosure been provided.

38. Defendant procured consumer reports with respect to Plaintiff and the Disclosure Class members. The disclosures provided to Plaintiff were the same or substantially the same as the one provided to all Disclosure Class members. As such Defendant uniformly violated the rights of all Class members in the same way by including providing confusing disclosures riddled with extraneous information.

39. Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

   (i) The rule that FRCA disclosures be "clear and conspicuous" and part of a document consisting "solely" of that disclosure has been the law established for well over a decade.

   (ii) Defendant is a large company who regularly engages outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others.

   (iii) Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a company's FCRA responsibilities exists and is readily available explaining that such disclosures must stand-alone. This readily-available guidance means Defendant either

10

was aware of its responsibilities or plainly should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

40. Plaintiff and the Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

41. Accordingly, under the FCRA, Plaintiff and the Disclosure Class seek statutory damages, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

### COUNT II
### Violation of 15 U.S.C. § 1681b(b)(3)
### (On Behalf of Plaintiff and the Adverse Action Class)

42. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

43. The FCRA provides that:

(3) Conditions on use for adverse actions.

(A) In General. Except as provided in subparagraph (b), in using a consumer report for employment purposes, *before* taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

(i)   a copy of the report; and
(ii)  a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

*See* 15 U.S.C. 1681b(b)(3) (Emphasis added).

44. The FCRA defines adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

45. In construing the FCRA, the FTC made clear, applicants and employees are to be afforded the opportunity to review the background check/consumer report and to discuss it with the employer before losing out on a job (or having other adverse action taken against them)

11

because of information contained in the report. The FTC has repeatedly stated that in general an employer should wait at least five (5) business days following the notice to the applicant or employee of the anticipated adverse action—together with a copy of the report and a summary of the applicant/employees' FCRA rights—before actually taking the adverse action. This notice advises the applicant or employee of their ability to discuss the report with their employer. (*See, e.g.*, FTC Advisory Opinion to Weisberg, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97.)

46. After obtaining a consumer report about Plaintiff for employment purposes, Defendant—based in whole or in part on information contained in Plaintiff's consumer report—terminated Plaintiff, an adverse employment action.

47. Defendant violated Section 1681b(b)(3)(A) of the FCRA by failing to provide Plaintiff and members of the Adverse Action Class with any pre-adverse action notice. That is, Defendant told Plaintiff he was being terminated without providing the pre-adverse action notice, copy of the report, and summary of rights. Rather, Defendant "shoots first" and simply terminates while skipping the pre-adverse action step entirely. Without providing a pre-adverse notice, Defendant robs applicants and employees of any meaningful chance to discuss any aspect of their consumer reports with Defendant prior to the decision to fire him, as intended by the FCRA.

48. Defendant's violations of 15 U.S.C. § 1681b(b)(3)(A) were willful. The rule that employers must give applicants and employees an opportunity to remedy any discrepancies with their consumer reports directly with the employer is well established. Defendant is a large company that has retained lawyers on staff and regularly engages counsel—it has ample means and opportunity to seek legal advice regarding their FCRA responsibilities. Further, there is a glut of judicial and administrative guidance—dating back to the 1990's—regarding a company's FCRA responsibilities. As a consequence of such readily available guidance, Defendant was either aware of its responsibilities or should have been aware of its responsibilities but violated the FCRA anyway.

49.     Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

50.     Accordingly, under the FCRA, Plaintiff and the Adverse Action Class seek statutory damages, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Downing, individually and on behalf of the Classes, respectfully requests that this Court issue an order:

A.  Certifying this case as a class action on behalf of the Classes defined above, appointing Justin Downing as class representative and appointing his counsel as class counsel;

B.  Awarding damages, including statutory and treble damages where applicable, to Plaintiff and the Classes in amounts to be determined at trial;

C.  Awarding Plaintiff and the Classes their reasonable litigation expenses and attorneys' fees;

D.  Awarding Plaintiff and the Classes pre- and post- judgment interest, to the extent allowable; and

E.  Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: May 23, 2018                By:   /s/ Penny L. Koepke
                                         One of Plaintiff's Attorneys

                                   Penny L. Koepke
                                   Maxwell & Morgan, P.C.
                                   4854 E. Baseline Road, Suite 104
                                   Mesa, Arizona 85206
                                   480-833-1001
                                   pkoepke@hoalaw.biz

///

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

* *Pro Hac Vice applications to be filed*

# EXHIBIT A



## DISCLOSURE OF BACKGROUND INVESTIGATIONS

Haven Health may perform a background check or it may obtain information about you from a third party consumer reporting agency for employment purposes. Background checks may be conducted pre and post hire throughout your employment. Thus, you may be the subject of a "consumer report" and or an "investigative consumer report," which may include information about your character, general reputation, personal characteristics and or mode of living, which can involve personal interviews with sources such as your neighbors, friends or associates. These reports may contain information regarding your credit history, social security verification, motor vehicle records (driving records), verification of your education or employment history or other background checks. Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying.

Upon written request made within a reasonable time, you have the right to request whether a consumer report has been run about you and to request the disclosure of the nature and scope of any investigative consumer report and to request a copy of your report. The most common form of investigative consumer report is an employment history or verification. Haven Health may conduct some of these searches internally. For those searched conducted by a consumer reporting agency, these searched will be conducted by easyBackgrounds, Inc., P.O. Box 952, 10 Main Street, Newfield, NH, 03856, 800-538-6525. easyBackgrounds' Privacy Policy may be viewed on its website at www.easybackgrounds.com. The scope of this disclosure is all-encompassing, allowing Haven Health to obtain from any outside organization all manner of consumer reports throughout the course of your employment to the extend required and or permitted by law.

Background checks and screenings are performed to protect the residents, employees, visitors and others as well as to comply with state and federal laws governing health care employment. All offers of employment are conditioned upon the successful completion of any background checks or screenings performed in your facility. Additionally, if you fail to maintain an acceptable background check and or proper licensure pertinent to your position, it will be considered an immediate voluntary resignation from Haven Health without proper notice.

| CONSENT | | |
|---|---|---|
| I acknowledge the Disclosure of Background Investigations above and the Background Check and Licensure Verification Policy as explained above as well as in the Employee Handbook and authorize Haven Health to conduct these investigations and license verifications as a condition of my being extended an employment offer and or as a condition of my continued employment if hired with Haven Health. Should I be hired and fail to maintain an acceptable background check and or proper licensure pertinent to my position, it will be considered an immediate voluntary resignation from Haven Health without proper notice. I also agree that a printed copy or electronic copy of this document may be accepted with the same authority as this original. | | |
| **APPLICANT PRINTED NAME:** Justin Downing | **DATE:** | 1/23/19 |
| **APPLICANT SIGNATURE:** Justin Downing | | 1/23/19 |

| RECORD OF BACKGROUND INVESTIGATIONS AND LICENSURE VERIFICATION (HAVEN HEALTH USE ONLY) | | | | |
|---|---|---|---|---|
| DATE ADMINISTERED | ADMINISTERED BY | TYPE OF CHECK | RESULT | DATE OF VALIDITY |
| Electronic - See Attached | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Disclosure and Record of Background Investigations
© 2017. Haven Health Group, LLC. All Rights Reserved. Version 0417.