Penny L Koepke
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
480-833-1001
pkoepke@hoalaw.biz

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Justin Downing, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

Haven Health Group, LLC, an Arizona limited liability company,

    Defendant.

Case No. 3:18-cv-08109-DWL

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF STANDING**

**Oral Argument Requested**

## I.  INTRODUCTION

Defendant Haven Health Group LLC's[1] ("HHG" or "Defendant") background check disclosure form ("Disclosure Form") is replete with extraneous information in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act").

---

[1] As the Court has been made aware through the Parties' on-going discovery dispute, HHG maintains that, assuming Plaintiff could show Article III standing, the only proper defendant in the case would be Haven of Show Low, LLC—the entity formed for the specific HHG location for where Plaintiff Downing applied to work. The Parties are engaged in discovery regarding the management of the entities and the decision to uniformly use identical FCRA forms and to retain easyBackgrounds to obtain background checks. Following such discovery, Plaintiff may amend to include the nearly 19+ other HHG entities and/or Health Group Management, LLC, the entity that executed the agreement with easyBackgrounds on behalf of all other HHG entities.

1

Rather than accept responsibility for this error, HHG moves to dismiss on standing grounds. That is, relying primarily on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), HHG asserts that Plaintiff Justin Downing ("Downing" or "Plaintiff") lacks Article III standing to sue because, supposedly, he cannot allege a concrete and particularized injury.

The Motion to Dismiss falls apart. Fortunately for Plaintiff Downing and applicants and employees that were presented with the same unlawful Disclosure Form, section 1681(b)(2)(A)'s disclosure and authorization provisions grant substantive rights that, when violated, cause informational harms and privacy violations sufficiently concrete and particularized to establish Article III standing. The lynchpin is whether the form confused the plaintiff. Indeed, as the Ninth Circuit explained in *Syed v. M-I, LLC* (which Defendant tellingly fails to mention), an applicant or an employee who plausibly pleads that they were confused by extraneous information contained in an FCRA background check disclosure has standing to sue. 853 F.3d 492, 499-500 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 447 (2017); *see also Mitchell v. Winco Foods, LLC,* Case No. 17-35998, Dkt. 33-1 (9th Cir. November 29, 2018), attached hereto as Exhibit A (reversing dismissal of FCRA background check disclosure claims and granting plaintiff leave to amend pleading to include express allegations of confusion based on extraneous information in the disclosure).

Applied here, HHG's Disclosure Form is indisputably riddled with extraneous information including fine print, vague statements, and references to unrelated policies and procedures. Critically, Plaintiff expressly alleges that he was confused as a result of such superfluous information. (Compl. ¶ 3.)

Unable to refute these allegations, HHG simply ignores the Complaint, claiming instead that Plaintiff has suffered a mere procedural violation of the FCRA and that, as a consequence, no injury in fact exists. In doing so, HHG overlooks the concrete and particularized harms that Congress recognized result when applicants and employees are

denied the opportunity to knowingly and meaningfully authorize the reports before their information is disclosed. HHG's Motion also fails to address Plaintiff's allegations that Defendant violates the FCRA's "clear and conspicuous" disclosure requirement, as well as Plaintiff's resulting confusion.

In short, Downing sufficiently alleges that he was confused by the disclosure and that he would not have provided his authorization had he been properly informed. As such, and as further explained below, nothing more is needed to demonstrate Plaintiff's standing.

## II.   STATEMENT OF FACTS

HHG operates numerous long-term care facilities throughout Arizona. (Compl. ¶ 11.) Defendant has thousands of employees and applicants. (*Id.* ¶ 25.)

In or around January 2018, Plaintiff Downing applied and was hired for a position with HHG as an employee at a location in Show Low, Arizona. (Compl. ¶ 12.) As part of HHG's hiring process, Plaintiff was required to complete various acknowledgments of company disclosures, including the Disclosure Form regarding a background and criminal history check. (*Id.* ¶ 13.) The Disclosure Form was riddled with extraneous information including disclosures required for investigative consumer reports, references to state and federal laws governing health care employment, a disclosure requiring job applicants and employees to maintain "proper licensure," statements informing applicants that their failure to maintain an adequate background check or proper licensure will be deemed a voluntary termination, and a record of background investigations and licensure verification. (*See* Compl., Ex. A.) Further, HHG packs the authorization—which is on the *same* document as the Disclosure—with unrelated extraneous information and consent language. (Compl. ¶ 15.) Among other issues, the authorization includes an acknowledgment by the applicant that it has received and reviewed HHG's (1) Disclosure Form, (2) Licensure Verification Policy, and (3) certain statements in the Employee

Handbook. (*See* Compl., Ex. A.)

As a result of the inclusion of extraneous information as well as the Disclosure's failure to be "clear and conspicuous," Plaintiff Downing was confused as to the nature of the report being procured about him and would not have authorized the disclosure had a lawful disclosure been used. (Compl. ¶ 16.) Downing specifically pleads that:

- Here, Defendant provides applicants and employees with a disclosure that is riddled with unnecessary, extraneous, and unlawful information. The result is a disclosure that is, at best, unclear and inconspicuous and confusing to Plaintiff and other consumers. It fails to standalone. That is, on information and belief, the disclosures and authorizations are combined with unrelated extraneous information that confuses the meaning of the disclosure and strips job applicants and employees of their ability to make a knowing authorization. (Compl. ¶ 3.)

- Rather than provide a clear and conspicuous, standalone disclosure—as the FCRA requires—Haven Health's disclosure and authorization provided to Plaintiff and others was replete with extraneous information. . . . Among other issues, Haven Health's form FRCA background check disclosure unlawfully combines the disclosures required for consumer reports with the disclosures required for investigative consumer reports, including information regarding the nature and scope of any investigation. . . . Further, the disclosure contains disclosures requiring job applicants and employees to maintain "proper licensure pertinent to" their positions. (Compl. ¶ 14.)

- Additionally, Haven Health's form FCRA authorization is similarly riddled with extraneous information, including inapplicable state law disclosures and an authorization granting a litany of entities, including law enforcement agencies, state or federal agencies, schools or universities, employers and insurance companies. *In sum, it cannot be said that Haven Health's disclosure and authorization are clear and conspicuous or that they stand- alone.* (Compl. ¶ 15.) (Emphasis added.)

- The disclosure provided by Haven Health were *confusing to Plaintiff and the average consumer*. *As a result of the extraneous information, Plaintiff was confused as to the nature of the report being procured about him. That is, because Haven Health fails to provide a standalone disclosure as required under the FCRA, Plaintiff and others were deprived of their ability to meaningfully understand and authorize the reports and wouldn't have*

*authorized them had a lawful disclosure been made.* (Compl. ¶ 16.) (Emphasis added.)

- The pre-report disclosure that Defendant provided to Plaintiff and the Disclosure Class members as part of the application process willfully violated the FCRA by not being clear and conspicuous and by including extraneous information such that the disclosure cannot be said to "stand alone." Among other deficiencies, the disclosure is riddled with extraneous information, combines the disclosures for "investigative consumer reports" with the disclosures required for "consumer reports," and unlawfully includes language regarding the consequences to employees of failing to maintain appropriate licenses. As such, the background check disclosure was not clear and conspicuous and was not presented in a document that stood alone/consisted solely of the disclosure. (Compl. ¶ 36.)

- Defendant's authorization was similarly riddled with *extraneous and confusing information*, including disclosures purporting to authorize a list of institutions to share information with Defendant or its third-party background check vendor. *Plaintiff wouldn't have authorized the background check had a proper disclosure been provided.* (Compl. ¶ 37.) (Emphasis added.)

HHG procured a consumer report regarding Downing. (Compl. ¶ 17.) After the report was received, HHG took adverse action against Plaintiff (terminating his employment) based in whole or in part on information in the report. (*Id.* ¶ 18.) HHG failed to provide any pre-adverse action notice to Plaintiff prior to termination. (*Id.* ¶ 19.)

In short, HHG's Disclosure Form includes unnecessary extraneous information that rendered the Disclosure Form "confusing to Plaintiff and other consumers" because it improperly includes "unrelated extraneous information that confuses the meaning of the disclosure and strips job applicants and employees of their ability to make a knowing authorization." (Compl. ¶ 3.)

As explained below, such allegations are sufficient to establish concrete harm.

## III.   ARGUMENT

Standing is of course "an essential element of federal-court subject matter jurisdiction." *Orient v. Linus Pauling Institute of Science and Medicine*, 936 F.Supp. 704,

5

706 (D. Ariz. 1996). Article III standing requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). At the pleading stage, a plaintiff must allege facts to demonstrate each element of standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) ("[A] case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element."); *see also Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'").

Here, HHG attacks Downing's ability to show concrete injuries. In the context of FCRA background check disclosure violations, the Ninth Circuit has specifically explained that Sections 1681b(b)(2)(A)(i) and 1681b(b)(2)(A)(i)(i) of the FCRA create information and privacy rights, the violation of which may lead to concrete harms. *Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017). The key question in the analysis asks whether the allegations show that the applicant or employee was plausibly confused by the inclusion of extraneous information or unaware that s/he was signing a waiver authorizing a background check. *Id.* at 500; *see also Winco* (Ex. A) (remanding dismissal and granting plaintiff leave to amend to include allegations of confusion resulting from extraneous information).

As explained below, Downing can show he has standing in this case.

**A.     HHG's standing attacks fall apart—HHG misunderstands *Spokeo* and other authorities while ignoring on-point authority from the Ninth Circuit, under which Downing's allegations of confusion suffice to show concrete harm.**

6

For its argument-in-chief, HHG asserts that Downing lacks standing because, supposedly, HHG's "failure to provide a required notice under [*sic*] FCRA is a 'procedural' violation that does not support standing…." (Def. Mot. 7.) That is, relying on a misreading of *Spokeo*, *In re Michaels Stores, Inc.*, and other cases, HHG claims that Plaintiff cannot show standing based on the fact that HHG provided a disclosure form "that contained more information than was required by the FCRA." (Def. Mot. 9) (*citing Noori v. Vivint, Inc.*, 2016 U.S. Dist. LEXIS 120963, *11-15 (C.D. Cal. Sept. 6, 2016)).

HHG's arguments lack merit and should be rejected. First, HHG seriously misinterprets *Spokeo*. Contrary to HHG's assertions, nowhere did the *Spokeo* Court hold that all violations of the FCRA's disclosure provisions were merely procedural in nature and thus insufficient to show concrete harm. Indeed, as explained by the Ninth Circuit in *Syed*—on-point precedent that HHG fails to even cite—Article III standing in the context of FCRA background check disclosure violations hinges on whether the applicant or employee can show that s/he was confused by the extraneous information such that they were denied the ability to make a meaningful authorization. Downing expressly alleges he suffered such confusion here. (Compl. ¶¶ 13, 15, 16, 36-37.)

Second, HHG's reliance on *In re Michaels Stores* and its string-cited cases is misplaced. None of those authorities suggests that employees like Downing—who expressly allege they were confused by the extraneous information unlawfully included in their respective FCRA disclosures—lack standing. Just the opposite is true: the cases are nearly uniform in their focus on whether the applicant/employee was denied the ability to meaningfully authorize the report due to confusion from the alleged surplusage.

Finally, HHG misunderstands the harm, as recognized by Congress, that stems from providing consumers with too much information. As courts have explained, information overload from extraneous disclosures may distract applicants and employees from the background check disclosure and thereby deny such persons the ability to

meaningfully authorize their reports. The risk of this harm is sufficient to confer standing.

As such, and as set forth more fully below, the Court should find that Downing alleges sufficient facts to show he enjoys Article III standing here.

### 1. HHG misconstrues the Supreme Court's decision in *Spokeo*.

As an initial matter, Defendant incorrectly asserts that the Supreme Court's decision in *Spokeo, Inc. v. Robins* stands for the proposition that any insufficient FCRA disclosure is merely a procedural violation divorced from any concrete harm. (Def. Mot. 7) ("*Spokeo* makes clear that a notice that falls short of FCRA's requirements does not in and of itself qualify as a concrete injury in fact for Article III standing purposes.") This is incorrect. As this Court has previously explained, "[t]he *Spokeo* decision did not, however, purport to draw the line between a 'bare procedural violation lacking concrete harm and a concrete injury in fact. The holding of *Spokeo* was simply that a court must separately consider both concreteness and particularity to make a finding of injury in fact." *Mix v. Asurion Insurance Services Incorporated*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *4 (D. Ariz. Dec. 14, 2016) (citing *Spokeo, Inc. v. Robins*, 136 S.Ct. at 1550).

Defendant's argument also ignores (and fails to apprise the Court of) the fact that that the Ninth Circuit reaffirmed its prior conclusion that Robins had standing to sue under the FCRA. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1118 (9th Cir. 2017) ("We are satisfied that Robins has alleged injuries that are sufficiently concrete for the purposes of Article III.") ("Spokeo III").

Additionally, the notices to be provided in *Spokeo* did not involve disclosures provided directly to consumers, let alone applicants and others in the employment context. As such, even if the *Spokeo* Court had concluded that a failure to properly provide the notices required in that case did not confer standing to sue, that would do little to inform the analysis here, where Downing was entitled, by act of Congress, to specific information so as to allow him to meaningfully authorize the report.

Put simply, the notion that under *Spokeo* all claims challenging FCRA notices are merely procedural in nature and thus insufficient to confer standing when violated is incorrect and misleading. As explained below, it also comes at the expense of analyzing actual on-point authority from the Ninth Circuit.

### 2. HHG wholly ignores the Ninth Circuit's decision in *Syed* and, predictably, misunderstands Article III standing in this context.

Notably absent from Defendant's motion is any discussion regarding the Ninth Circuit's decision in *Syed*. Such silence speaks volumes. In *Syed*, the Ninth Circuit addressed Article III standing in the context of FCRA background check disclosures and found standing exists for applicants and employees who allege they were confused by the disclosure, explaining that:

> A plaintiff who alleges a "bare procedural violation" of the FCRA, divorced from any concrete harm," fails to satisfy Article III's injury-in-fact requirement. *Spokeo, Inc. v. Robins*, — U.S. —, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016). However, Syed alleges more than a "bare procedural violation." The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy." *See Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, J., concurring)).
>
> Syed alleged in his complaint that he "discovered Defendant M-I's violation(s) within the last two years when he obtained and reviewed his personnel file from Defendant M-I and discovered that Defendant M-I had procured and/or caused to be procured a 'consumer report' regarding him for employment purposes based on the illegal disclosure and authorization form." This allegation is sufficient to infer that Syed was deprived of the right to information and the right to privacy guaranteed by Section 1681b(b)(2)(A)(I)–(ii) *because it indicates that Syed was not aware that he was signing a waiver authorizing the credit check when he signed it. Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute.* Therefore, Syed

did allege a concrete injury and has Article III standing to bring this lawsuit. *See Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 628–638 (E.D. Va. 2016) (holding that an improper disclosure under 15 U.S.C. § 1681b(b)(2)(A) causes "a concrete injury sufficient to confer standing").

*Syed,* 853 F.3d at 499-500. Hence, *Syed* holds that section 1681b(b)(2)(A) confers informational and privacy rights on applicants and employees, and the focus for standing is whether the extraneous information rendered the disclosure confusing. If an applicant or employee plausibly alleges that they were confused by the extraneous information or that they would not have authorized the report had a compliant disclosure been provided, then they enjoy standing to sue.

Applied here, Downing's Complaint includes repeated allegations that the inclusion of extraneous information rendered the Disclosure Form confusing such that he and others were denied the ability to meaningfully authorize the disclosure. (Compl. ¶¶ 3, 14, 15, 16, 36, 37.) And Downing further alleges that had he been presented with a lawful disclosure *he would not have authorized it*. (Compl. ¶ 37.) This is *Syed* revisited. That is, Plaintiff Downing, just like Syed, alleges he was confused by the inclusion of extraneous information and would not have authorized the disclosure had he understood what he was authorizing. As the Ninth Circuit explained, this is the very type of harm—a violation of Plaintiff's right to privacy and right to information—that Congress sought to protect. No further allegations are necessary to confer standing.

In sum, Downing alleges standing in accordance with *Syed*, notwithstanding HHG's failure to bring the case to the Court's attention. As explained next, none of HHG's authorities undercut *Syed's* applicability here.

### 3. HHG's reliance on *In re Michaels Stores* and other inapposite authorities is misplaced.

In ostensible support of its argument, HHG string cites several cases that it claims show employees and applicants lack standing to sue for FCRA disclosure violations due to a lack of concrete harm. (Def. Mot. 6-9.) HHG is mistaken. That is, in most of the cases HHG cites, the courts specifically explain that standing hasn't been demonstrated because

the applicant or employee failed to plead that the FCRA disclosure was confusing.

In *In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litigation*, which HHG cites at length, the court found that the plaintiff did not have standing to challenge the defendant's disclosure. MDL No. 2615, 2017 WL 354023, *8-11 (D.N.J. Jan. 24, 2017). In concluding that the plaintiffs had not suffered any particularized harm, however, the court pointed expressly to the fact that they did "not allege that they were *confused or distracted by the format, or that they did not know what they were authorizing.*" *Id.* at *11 (emphasis added). This is the polar opposite of what Downing alleges. That is, whereas the plaintiffs in *In re Michaels Stores* failed to allege confusion or that they didn't know what they were authorizing, Downing expressly alleged that he was confused by the Disclosure and would not have authorized it had he understood it.

Defendant's seven-case string-cite (Def. Mot. 8-9) fares no better. To begin, at least five of the seven cases specifically cite a failure by the plaintiffs to allege confusion as a basis for finding that no standing existed. *See, e.g., Lee v. Hertz Corporation*, Case No. 15-cv-04562-BLF, 2016 WL 7034060, at *1 (N.D. Cal. Dec. 2, 2016) ("Plaintiffs do not allege that the contents of the reports were inaccurate *nor do they allege that they were confused by the disclosure* notice regarding consent to procure a consumer report.") (emphasis added); *see also Shoots v. iQor Holdings US Inc.*, Case No. 15-cv-563 (SRN/SER), 2016 WL 6090723, at *5 (D. Minn. Oct. 18, 2016) ("Perhaps if he alleged that the inclusion of extraneous detail in the Applicant Disclosure *confused him in some way*, or that he was somehow directly harmed as a result of the background check, a case could be made that an invasion of privacy actually occurred.") (emphasis added); *see also Tyus v. United States Postal Service*, Case No. 15-CV-1467, 2017 WL 52609, at *6 (E.D. Wis. Jan. 4, 2017) ("absent an allegation that the plaintiffs did not understand or were confused by the disclosure forms because they were not limited to the information required by the stand-alone disclosure requirement, there is no privacy injury . . ."); *see*

11

*also Kirchner v. First Advantage Background Services Corp.*, CIV. No. 2:14-1437 WBS EFB, 2016 WL 6766944, *2 (E.D. Cal. Nov. 14, 2016), *appeal docketed* No. 90-567 (9th Cir. Dec. 1, 2016) ("Plaintiff does not allege that he failed to see or understand the notice."); *see also Nokchan v. Lyft, Inc.*, Case No. 15-cv-03008-JCS, 2016 WL 5815287, at *4 (N.D. Cal. Oct. 5, 2016) ("In particular, he does not alleged that as a result of Lyft's failure to provide the disclosures in a separate document or to notify him of his right to receive a summary of his legal rights *he was confused about his rights or that he would not have consented to the background checks had he understood his rights*.") (emphasis added).

As explained above, Downing expressly alleges his confusion here and plainly claims that he did not understand the disclosure. As such, HHG's cases are distinguishable and actually support a finding of standing here.

Defendant similarly cites *Groshek v. Time Warner Cable, Inc.*, Case No. 15-C-157, 2016 WL 4203506, at *2 (E.D. Wis. Aug. 9, 2016), which was ultimately affirmed upon appeal by the Seventh Circuit. 865 F.3d 884, 889 (7th Cir. 2017). In concluding that the employee in *Groshek* failed to show concrete harm, the Seventh Circuit explained,

> [Groshek's] complaint contained no allegation that any of the additional information caused him to not understand the consent he was giving; no allegation that he would not have provided consent but for the extraneous information on the form; no allegation that additional information caused him to be confused; and, no allegation that he was unaware that a consumer report would be procured. Instead, he simply alleged that Appellees' disclosure form contained extraneous information. We conclude that Groshek has alleged a statutory violation completely removed from any concrete harm or appreciable risk of harm.

*Id.* at 887. Hence, using the same reasoning as *Syed* and the other cited cases, the Seventh Circuit concluded that the issue boiled down to whether the applicant or employee has plausibly plead confusion or that they would not have authorized the report.

*Smith v. Ohio State University* also bares no resemblance to the case at hand

because the plaintiffs in that case conceded that they had not suffered a concrete consequential damage as a result of the breach. *See* 191 F.Supp.3d 750, 757 (S.D. Ohio 2016) ("Plaintiffs admitted that they did not suffer a concrete consequential damage as a result of OSU's alleged breach of the FCRA.").

Lastly, *Noori v. Vivint, Inc.* is also off point. In *Noori*, the court held that the plaintiff had only pleaded, in challenging an FCRA disclosure, a procedural violation. Case No. CV 16-5491 PA (FFMx), 2016 WL 9083368, at *4-5 (C.D. Cal. Sept. 6, 2016). *Noori* was determined prior to *Syed* and is not controlling. Further, the disclosure at issue in *Noori* did not contain provisions relating to wholly extraneous policies—such as the license verification policy at issue here. *Id.* at *5. Nor did the plaintiff in *Noori* allege, as Plaintiff Downing claims here, that the disclosure was not "clear and conspicuous." *Id.* As such, *Noori* is of little value to HHG here.

In sum, none of the cases HHG cites support its position. Rather, the cases show near uniform agreement that the focus of the inquiry rests squarely on whether the plaintiff plausibly claims s/he was confused—allegations that Plaintiff repeats throughout his Complaint.

**4. HHG additionally misunderstands the risk posed by "information overload" with respect to FCRA Disclosures.**

As a final matter, HHG misunderstands the harm threatened by its inclusion of extraneous information. That is, relying on *Noori*, HHG asserts that "Plaintiff has not, nor can he, plausibly allege any concrete harm arising out of having received more information in a single document than the FCRA might otherwise allow." (Def. Mot. 9.) This reasoning falls apart.

Several courts have found standing where an FCRA disclosure fails to stand-alone because the extraneous information distracted the applicant/employee or stifled, or increased the risk of stifling, the applicant or employee's ability to meaningfully authorize the report. *See Mix v. Asurion Insurance Services Incorporated*, No. CV-14-02357-PHX-

13

GMS, 2016 WL 7229140, at *4 (D. Ariz. Dec. 14, 2016) ("Mix alleges that Asurion and Sterling supplied her with a multi-page packet containing a FCRA disclosure along with other items. This arguably created a risk that Mix's information would be disseminated without her fully informed, knowing consent, violating her privacy rights as recognized in FCRA."); *see also Anderson v. Wells Fargo Bank, N.A.*, 266 F.Supp.3d 1175, 1185 (D. S.D. 2017) ("Plaintiff's claims grounded in § 1681b(b)(2)(A) allege a concrete injury under Article III."); *see also Moody v. Ascenda USA, Inc.*, No. 16-CV-60364, 2016 WL 5900216, at *5 (S.D. Fla. Oct. 5, 2016) (same); *see also Meza v. Verizon Commc'ns, Inc.*, No. 16-CV-0739, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016) (same).

As explained by the court in *Anderson*:

> The court finds an employer 'does create a real risk of harm' when it uses 'a disclosure that, because it is merely one section of a larger document, results in 'information overload' which inhibits a consumer's ability to agree to a background check with full knowledge of their rights and the potential consequences.'

*Anderson*, 266 F. Supp. 3d at 1185 (citing *Mix*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *5 (D. Ariz. Dec. 14, 2016), *reconsideration denied*, No. CV-14-02357-PHX-GMS, 2017 WL 131566 (D. Ariz. Jan. 13, 2017) ("The same is true for a disclosure that, because it is merely one section of a larger document, results in 'information overload' which inhibits a consumer's ability to agree to a background check with full knowledge of their rights and the potential consequences.")). Put simply, Congress understood that the disclosure would be rendered less effective if additional information was allowed to be included, and to prevent that specific harm Congress, through the plain language of the statute, required employers to ensure the disclosure was free of such extraneous provisions.

### B. HHG also overlooks Plaintiff's allegations that the Disclosure violated the FCRA's "clear and conspicuous" requirement.

As a final matter, Defendant incorrectly claims that Plaintiff's disclosure claim is

based solely on the allegation that Defendant violated the FCRA's standalone requirement. (Def. Mot. 6-9.) This is inaccurate. In addition to alleging that HHG's Disclosure Form violates the standalone requirement, Plaintiff also alleges that the Disclosure Form violates the FCRA by failing to be "clear and conspicuous."

The requirement that a disclosure be "clear and conspicuous" is an additional requirement under the FCRA that is separate and distinct from the question of whether the document consists "solely" of the disclosure. *See Syed*, 853 F.3d at 503 ("Because the question of whether a disclosure is 'clear and conspicuous' within the meaning of Section 1681b(b)(2)(A)(i) is separate from the question of whether a document consists 'solely' of a disclosure, and is not one that is before us here, we decide only that including the waiver violated the statute's 'solely' requirement.").

Here, Plaintiff Downing's Disclosure Claim is premised both upon Haven Health's Disclosure's failure to standalone *and* its failure to be "clear and conspicuous." To be clear, Plaintiff repeatedly pleaded specific facts to support his allegation that Defendant's Disclosure was confusing and could not be said to be "clear and conspicuous." (Compl. ¶¶ 2, 3, 14, 15, 16, 36, 37, 39.) As explained in *Syed*, just like the standalone disclosure rule, the "clear and conspicuous" requirement ensures that applicants and employees are given a fair opportunity to understand the disclosure so they can make an informed decision regarding the authorization of their reports. If, as is the case here, the Disclosure is unclear or confusing then the applicant or employee might be misled or confused as to what they are actually authorizing. Hence, the FCRA's "clear and conspicuous" requirement, just like the standalone requirement, confers informational and privacy rights that, when violated, are sufficient to demonstrate concrete harm.

Thus, Plaintiff has standing to challenge Defendant's Disclosure's failure to be "clear and conspicuous" as well.

## IV. CONCLUSION

Haven Health's Disclosure is full of extraneous information that overshadowed and confused Plaintiff Downing who would not have, absent this confusion, authorized the disclosure of his consumer report. Therefore, Haven Health's procurement of his consumer report violated both his right to information as well as his right to privacy. Further, as an alternative basis for standing, Plaintiff plausibly alleged that the Disclosure at issue was not "clear and conspicuous" which, again, violated his right to privacy and information.

WHEREFORE, Plaintiff Downing respectfully requests that the Court deny Defendant's Motion to Dismiss for lack of standing and award such additional relief as the Court deems necessary, reasonable, and just.

Dated: December 3, 2018                By:   /s/ Steven L. Woodrow
                                              One of Plaintiff's Attorneys

                                       Penny L Koepke
                                       Maxwell & Morgan, P.C.
                                       4854 E. Baseline Road, Suite 104
                                       Mesa, Arizona 85206
                                       480-833-1001
                                       pkoepke@hoalaw.biz

                                       Steven L. Woodrow*
                                       swoodrow@woodrowpeluso.com
                                       Patrick H. Peluso*
                                       ppeluso@woodrowpeluso.com
                                       Taylor T. Smith*
                                       tsmith@woodrowpeluso.com
                                       Woodrow & Peluso, LLC
                                       3900 East Mexico Ave., Suite 300
                                       Denver, Colorado 80210
                                       Telephone: (720) 213-0675
                                       Facsimile: (303) 927-0809

                                       Attorneys for Plaintiff and the Classes
                                       * *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, Steven L. Woodrow, an attorney, hereby certify that I served the foregoing papers by causing true and accurate copies of such papers to be transmitted to all counsel of record through the Court's electronic filing system on December 3, 2018.

/s/ Steven L. Woodrow