**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Downing,<br><br>    Plaintiff,<br><br>v.<br><br>Haven Health Group LLC,<br><br>    Defendant. | No. CV-18-08109-PCT-DWL<br><br>**ORDER** |

Pending before the Court is Defendant's motion, under Rule 12(b)(1), to dismiss Count One of the complaint for lack of standing. (Doc. 27.) As explained below, the motion will be denied.[1]

## BACKGROUND

A. <u>Factual Allegations</u>

The complaint was filed on May 23, 2018. (Doc. 1.) The following summary assumes the truth of all allegations contained therein.

Under the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. § 1681 *et seq.*, an employer that wishes to obtain and use consumer reports regarding its job applicants and employees must provide a "clear and conspicuous" disclosure of its intention to do so "in a document that consists solely of the disclosure." (Doc. 1 ¶ 3.)

In or around January 2018, Justin Downing ("Plaintiff") was hired by Haven Health

---

[1] Plaintiff has requested oral argument. The Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f) (same).

Group, LLC ("Defendant").[2] (Doc. 1 ¶ 12.) During the hiring process, Plaintiff was presented with various disclosure and authorization forms. (*Id.* ¶ 13.) However, the form that disclosed Defendant's intention to obtain consumer reports concerning Plaintiff "was replete with extraneous information" (*see id.* ¶ 14) and the separate form that sought authorization to obtain such reports was "similarly riddled with extraneous information" (*see id.* ¶ 15). The presence of this extraneous information caused Plaintiff to become "confused as to the nature of the report being procured about him" and "deprived [him] of [his] ability to meaningfully understand and authorize the reports." (*Id.* ¶ 16.) Plaintiff "wouldn't have authorized" Defendant to obtain his consumer reports "had a lawful disclosure been made." (*Id.*)

"Shortly after" Plaintiff was hired, Defendant obtained a consumer report pertaining to him, which revealed that Plaintiff had a criminal history. (*Id.* ¶ 17.) In February 2018, Defendant terminated Plaintiff's employment, effectively immediately, without showing him the consumer report and without providing any advance notice of its intent to take an adverse employment action. (*Id.* ¶¶ 18-19.)

B.  Legal Theory

The complaint, which asserts claims on behalf of a class of similarly-situated individuals (*see* Doc. 1 ¶¶ 24-31), contains two counts. Count One—which is the only count challenged in the motion to dismiss—is a claim that Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by failing to provide a clear and conspicuous disclosure, in a standalone form, of Defendant's intention to obtain consumer reports concerning its employees. (Doc. 1 ¶¶ 32-41.) Count Two is a claim that Defendant willfully violated 15 U.S.C. § 1681b(b)(3) by terminating Plaintiff without first providing a copy of his consumer report or providing notice of its intent to take adverse action. (Doc. 1 ¶¶ 42-50).

---

[2] Defendant contends that "Haven Health Group, LLC is a holding company that has no employees and processes no employment applications or background checks" and that the correct defendant in this case is therefore Haven of Show Low, LLC dba Haven Health of Show Low. (Doc. 27 at 1 & n.1.) The Court need not resolve any disputes over this issue for purposes of the pending motion.

**DISCUSSION**

A. Legal Standard

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo I*"), the Supreme Court considered whether a plaintiff alleging a violation of the same regulatory scheme at issue in this case—the FCRA—had standing to pursue his claim. The Court began by reiterating several long-established standing principles, including that the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," that the plaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing these elements," and that the injury-in-fact element is satisfied only if the plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1547-48 (citations omitted). The Court further stated that for an injury to be "particularized," "it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (citation omitted). And for an injury to be "concrete," it "must be '*de facto*'; that is, it must actually exist." *Id.* The Court cautioned, however, that "concrete" is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* at 1549.

After articulating these standards, the Court applied them to the FCRA claim before it. The Court concluded, on the one hand, that standing doesn't automatically arise whenever a plaintiff alleges a violation of a statutory scheme. The Court explained that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," that "Article III standing requires a concrete injury even in the context of a statutory violation," and that a plaintiff therefore cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. On the other hand, the Court recognized that "the violation of a procedural right granted by

statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* Thus, the Court remanded to the Ninth Circuit to assess whether the particular type of FCRA violation alleged by the plaintiff "entail[ed] a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

On remand, the Ninth Circuit concluded the plaintiff had standing. *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) ("*Spokeo II*"). In reaching this conclusion, the court adopted the following two-part test to determine whether a plaintiff alleging a statutory violation has sufficiently established a concrete injury: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* at 1113. With respect to the first element, the court emphasized that "congressional judgment still plays an important role in the concreteness inquiry" and that "Congress's judgment as to what amounts to a real, concrete injury is instructive." *Id.* at 1112. With respect to the second element, the court held that *Spokeo I* "requires some examination of the *nature* of the specific alleged [violation] to ensure that [it] raise[s] a real risk of harm to the concrete interests that [the statutory scheme] protects." *Id.* at 1116.

B.  Parties' Arguments

Defendant asks the Court to dismiss Count One for lack of standing. (Doc. 27.) Defendant's argument, in a nutshell, is that the forms it provided to Plaintiff during the hiring process contained all of the substantive information required under the FCRA and, even though that information wasn't provided in a standalone form as required by the FCRA, a violation of this particular FCRA provision is a mere procedural violation that's insufficient to confer standing under *Spokeo I* and *Spokeo II*. (Doc. 27 at 4-7.) In support of its position, Defendant cites several unpublished district court decisions. (*Id.* at 7-9.)

In his response, Plaintiff argues that his rights under the FCRA to obtain clear, conspicuous disclosures in a standalone form are "substantive rights that, when violated,

cause informational harms and privacy violations sufficiently concrete and particularized to establish Article III standing." (Doc. 35 at 1-2.) In support of his position, he cites *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), and *Mitchell v. WinCo Foods, LLC*, 743 Fed. App'x 889 (9th Cir. 2018). Plaintiff also contends the cases on which Defendant relies are distinguishable because they didn't involve an express allegation that the plaintiff was confused by the inclusion of the extraneous information. (Doc. 35 at 11.) Finally, Plaintiff argues that Count One involves two distinct violations of the FCRA—*first*, a failure to provide a "clear and conspicuous" disclosure, and *second*, a failure to make the disclosure in a standalone form—and Defendant's dismissal arguments focus only on the second theory. (Doc. 35 at 14-15.)

In its reply, Defendant argues that *Syed* is distinguishable because the disclosure form in this case "clearly explained that Defendant was going to obtain a credit report and background check, and Plaintiff signed it at the time while knowing what its import was." (Doc. 37 at 4). Similarly, Defendant argues that the Court needn't accept the complaint's "talismanic recital of [Plaintiff's] alleged confusion" because the Court can determine, by conducting its own review of the disclosure form, that the form isn't confusing. (Doc. 37 at 4-9.) Finally, Defendant argues that informational injuries are insufficient to confer standing under the *Spokeo* line of cases (Doc. 37 at 10-11) and that Plaintiff's clear-and-conspicuous theory is functionally the same as his standalone theory (Doc. 37 at 11.)

C.  Analysis

The Court will deny the motion to dismiss. This case is very similar to, and controlled by, *Syed*. There, an employer was sued under the FCRA for obtaining a credit report concerning a prospective employee. 853 F.3d at 495-96. Even though the employer provided a disclosure form during the application process that specifically "informed Syed that his credit history and other credit information could be collected and used as a basis for the employment decision," Syed argued the form "contained too much" information and thus "violated the statutory requirement that the disclosure document consist 'solely' of the disclosure." *Id.* at 497-98. The district court dismissed but the Ninth Circuit

reversed, holding (among other things) that Syed had "established Article III standing" because he had "allege[d] more than a 'bare procedural violation' [under *Spokeo I*]." *Id.* at 499 (citation omitted). The court explained:

> The disclosure requirement at issue . . . creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. The authorization requirement . . . creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of [these provisions], Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy."

*Id.* (citation omitted). The court continued:

> Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute. Therefore, Syed did allege a concrete injury and has Article III standing to bring this lawsuit.

*Id.* at 499-500.

The allegations in this case are nearly identical to those in *Syed*. Plaintiff alleges that Defendant larded too much extraneous information into its FCRA disclosure forms, that he was confused by this extra information, and that he wouldn't have signed the forms if he'd understood what he was doing. Under *Syed*, these allegations are sufficient to confer Article III standing. Finally, Defendant's attempts to distinguish *Syed* are unavailing—the Court cannot, at the motion-to-dismiss stage, simply disregard Plaintiff's allegations that the forms are confusing and that he actually suffered confusion.

Accordingly, **IT IS ORDERED** that the motion to dismiss (Doc. 27) is **DENIED**.

Dated this 25th day of January, 2019.

Dominic W. Lanza
United States District Judge